UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

CIVIL ACTION NO.: 4:19−CV−40156−DHH

| | |
|---|---|
| BUSINESS EXPOSURE REDUCTION GROUP (BERG) ASSOCIATES, LLC<br>Plaintiff,<br><br>v.<br><br>PERSHING SQUARE CAPITAL MANAGEMENT, L.P.<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

INTRODUCTION

Plaintiff, Business Exposure Reduction Group Associates, LLC (hereinafter "BERG") opposes the Motion to Dismiss of Defendant, Pershing Square Capital Management, L.P. (hereinafter "PSCM"). While BERG as an LLC is not a Massachusetts "resident", its founder and one of its former principal investigators, John Moynihan, resides in Worcester, Massachusetts and did so throughout the period of formation and performance of the contract in question with PSCM. PSCM sought the assistance of Mr. Moynihan and BERG in connection with its short position on Herbalife stock. PSCM knew Moynihan resided in and worked out of Worcester.

Mr. Moynihan, along with his partner, Larry Johnson, drafted the Fee Agreement that is at the heart of this dispute, while working in Massachusetts at this home office. BERG emailed a draft of the letter agreement to PSCM, which responded to the email with a redraft of the agreement. The letter was then signed by the parties through an exchange of emails.

BERG's investigative work under the engagement then commenced, and it was not limited to work in New York City, Latin America, Mexico, Russia, and Brazil, as PSCM suggests in its

Memorandum of Law in Support. Investigative work was done in those places, but a considerable amount of work was done in other locations, as well as in Worcester, at Moynihan's office. Countless emails were sent to PSCM from Worcester and many were sent from PSCM in New York to Worcester. PSCM requested meetings in New York, and Moynihan traveled from Worcester for those meetings. In short, PSCM knowingly availed itself of the opportunity to work with BERG, which although formally was a Florida LLC and maintained a business office there, was based substantially in Worcester, where Moynihan lives. For these reasons, as more fully detailed below, PSCM is subject to personal jurisdiction in Massachusetts.

BERG's Complaint is not subject to dismissal at this early stage for failure to state a claim for relief. It clearly does state viable claims for relief. BERG alleges that PSCM breached its contract with BERG by failing to pay a performance bonus built into the contract. During the period that BERG investigated Herbalife, and while PSCM used and publicized the information that BERG accumulated, Herbalife stock decreased significantly in value. Despite BERG's recommendations, PSCM chose not to close its position when the stock price neared its lowest and thereby reap the astronomical financial benefit BERG had helped procure. Rather, PSCM chose to terminate its engagement with BERG. At that time, BERG made demand for the performance bonus. PSCM did not deny that a bonus was due, but simply asked BERG to wait until it closed its stock position. BERG has alleged that, under the plan meaning of the contract, a bonus is due, and further that PSCM denied BERG the benefit of the contract in breach of PSCM's good faith obligations. There are issues of contract interpretation for the Court, and fact issues for the trier of fact. These are appropriately decided after full discovery and a full hearing or trial on the merits. Dismissal at this early stage is not appropriate, and PSCM's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) should be denied.

If the Court were to determine that PSCM is not subject to personal jurisdiction in this district, BERG asks that the Court exercise its discretion to transfer this action to the Southern District of New York, where PSCM has its principal place of business. BERG's assertions of jurisdiction in this Court are made in good faith on justifiable grounds. Thus, the Court can and should exercise its discretion to transfer, as opposed to dismiss the Complaint for lack of personal jurisdiction.

STATEMENT OF FACTS

BERG engages in consulting, forensic accounting and related investigative work. (Complaint, ¶7.) It is a Florida limited liability company, which has a usual place of business in Bradenton, Florida. (Complaint, ¶1.) At the time of its contracting with PSCM and throughout its engagement, BERG's principals were John Moynihan, a resident of Worcester, Massachusetts, and Larry Johnson, a resident of Pompano Beach, Florida. (Complaint, ¶5; Affidavit of John F. Moynihan ["Moynihan Affidavit"], ¶¶2,3,4.) PSCM is an investment firm, which, upon information and belief, is a Delaware limited partnership with a usual place of business in New York City. (Complaint, ¶¶2,6.)

PSCM engaged BERG on or about December 23, 2013 to perform certain enumerated investigative tasks. (Complaint, ¶8.) The engagement was memorialized in a written fee agreement dated December 23, 2013 ("the Fee Agreement"). (Complaint, ¶9.) The Fee Agreement was formed through phone and email communication into and from Massachusetts and Florida. (Moynihan Affidavit, ¶¶5-8.) PSCM initiated that contact. (Moynihan Affidavit, ¶¶6-8 and Ex. A.) Before the engagement, Moynihan traveled from Worcester to New York City for a meeting with PSCM representatives. (Moynihan Affidavit, ¶10.) Thereafter, the parties communicated extensively by phone and email into and from Massachusetts, where Moynihan had his residence

and usual business address throughout the parties' dealings. (Complaint, ¶5; Moynihan Affidavit, ¶¶21-24.) Moynihan also traveled to New York City from Worcester on several occasions at the request of PSCM for meetings regarding the engagement. (Moynihan Affidavit, ¶25.)

PSCM engaged BERG to investigate Herbalife and present objective facts about the company, its product and its operations, to potentially be used by PSCM in connection with its short position on Herbalife stock taken in May 2012. (Complaint, ¶10.) Pursuant to the Fee Agreement, PSCM agreed to pay for BERG's services on an hourly rate basis, plus expenses; the agreed rate was $200 per man hours worked. (Complaint, ¶13.) The Agreement provided that "[i]n the event the case developed by BERG Associates is settled or resolved in a manner that [PSCM] determines is beneficial to the financial standing of [PSCM], the hours billed previously by BERG will be paid at a rate of $750 per hour. The decision regarding the 'beneficial status' will be made by [PSCM] based on its evaluation of the work product delivered by BERG Associates." (Defendant's Exhibit B, at 2.)[1]

BERG's investigation into various aspects of Herbalife was quite revealing, and PSCM used the information that BERG uncovered. (Complaint, ¶15.) BERG found tax and fraud issues with respect to the operation of Herbalife. (Complaint, ¶16.) Most notably, BERG uncovered that the distribution of Herbalife was closely tied to drug trafficking channels and that known drug traffickers were deeply involved in the company. (Complaint, ¶17.) BERG also provided investigative support for the position that Herbalife was targeting low-income Latin Americans as distributors and exploiting them. (Complaint, ¶18.) PSCM revealed the information to the press and used it in public presentations, including the July 22, 2014 "The Big Lie" presentation made

---

[1] PSCM makes much of BERG's counsel not attaching a copy of the Fee Agreement to the Complaint. The agreement was specifically deemed confidential by the parties by the very terms of the agreement. Counsel was hesitant to file such a document in open court. Counsel did file the case under seal, but his judgment was not to file a confidential document in the court until any confidentiality or privacy concerns were addressed.

by PSCM and its principal, Mr. William Ackman. (Complaint, ¶19.) The result of BERG's work was unquestionably beneficial to PSCM and its financial standing. (Complaint, ¶21.) The Herbalife stock plummeted, from $80.81 per share (unadjusted price), when BERG was engaged in December 2013, to $33.25 (unadjusted price) per share when BERG was asked to "stand-down", or cease its investigation, on March 12, 2015. (Complaint, ¶22.)

At that time, Moynihan and Johnson strongly suggested that the short position be closed, which would have resulted in unquestionable value and a huge financial benefit to PSCM of $107,010,000.00 ($80.81 - $33.25 = $47.56 price per share, multiplied by the shares of stock PSCM held, 2,250,000). (Complaint, ¶23.) PSCM chose not to close its stock position at a time when doing so would have been most beneficial to it and instead asked BERG to stop its work. (Complaint, ¶24.) The Herbalife stock almost immediately began to recover, which was a strong indicator of the effectiveness of BERG's work. (Complaint, ¶25.)

BERG's success on PSCM's behalf and the financial benefit BERG provided is further evidenced by the fact that PSCM paid BERG's invoices for services in full throughout the engagement, never indicating any problems with or objections to the services that BERG provided. (Complaint, ¶26.) PSCM asked BERG to stand-down in March 2015 but indicated that it still wanted BERG available to consult if needed. Herbalife was the subject of a Federal Trade Commission (FTC) investigation and PSCM asked BERG to continue to respond to regulators with information. (Id.) PSCM took the BERG-developed information about Herbalife to the United States Drug Enforcement Administration (DEA), New York Field Division, to prosecute those responsible for the money laundering scheme that was at the heart of the Herbalife empire. (Id.) PSCM also took BERG discovered information to the FTC, which ultimately resulted in a

settlement in or around July 2016 [incorrectly stated in the Complaint as July 2015] whereby Herbalife paid defrauded investors. (Id.)

The parties agreed that the success of the engagement would be determined by the effect on the financial standing of PSCM, which in the context of the engagement was quite clearly the effect on its stock position. (Complaint, ¶27.) BERG was hired to investigate Herbalife and present those findings to in-house legal counsel at PSCM, which it did. (Complaint, ¶28.) There can be no dispute about the performance of Herbalife stock during BERG's engagement. (Complaint, ¶29.; see Moynihan Affidavit, ¶29.) PSCM's unilateral determination under the Fee Agreement that BERG's work was not beneficial to the financial standing of PSCM ignores the objective facts, is not taken in good faith, and is clearly taken simply to deny BERG the benefit of its contract. (Moynihan Affidavit, ¶33.) In fact, as noted above, one piece of information that BERG developed concerned the connection of Herbalife's operations with drug trafficking and money laundering channels. (Moynihan Affidavit, ¶34.) In order to save money, and apparently to try to avoid the performance bonus payable to BERG, PSCM asked BERG to stand-down in or around March 2015 and then took the information that BERG had developed and went directly to the DEA in New York, seeking further investigation and prosecution related to Herbalife's involvement in money laundering and drug trafficking without BERG's assistance. (Moynihan Affidavit, ¶¶35-36.)

BERG is owed its hourly fee increase under the Fee Agreement, calculated as follows: total hours billed were 5,612.5, multiplied by the additional rate of $550.00 per hour results in an amount due to BERG of $3,086,875.00. (Complaint, ¶30.) BERG's position was asserted in a demand letter dated March 24, 2015 to PSCM. (Complaint, ¶31.) At a subsequent meeting between BERG and PSCM representatives in New York on May 6, 2015, Mr. Ackman expressed surprise

that BERG had been asked to stand-down, apparently not having been so informed. (Complaint, ¶¶32-33.) He also did not deny the assertions that BERG made in its demand for payment. (Complaint, ¶33.) Mr. Ackman simply asked that BERG wait until he closed his position and then he would re-visit BERG's entitlement to additional compensation. (Complaint, ¶34.) PSCM closed its stock position in Herbalife in or around July 2018, and BERG renewed its demand for payment from PSCM by its counsel's letter dated July 24, 2019. (Complaint, ¶¶35-36.)

ARGUMENT

I. PSCM IS SUBJECT TO SPECIFIC JURISDICTION IN THIS DISTRICT.

BERG maintains that PSCM is subject to personal jurisdiction here in Massachusetts arising out of this transaction. The appropriate analysis of whether personal jurisdiction may be exercised over a nonresident defendant was detailed by this Court in the recent case of *Hopkins v. Yi*, No. 4:18-Cv-40197-TSH, 2019 WL 3547085 (D. Mass. May 31, 2019). BERG submits that application of the "prima facie" standard of review is appropriate.[2]

Under the prima facie method, the Court should consider whether the plaintiff has proffered enough evidence to support findings of all facts essential to personal jurisdiction, both under the forum's long-arm statute and the federal Due Process Clause. *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995); *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d at 675. The Court may consider "the pleadings and both parties' supplementary filings, including affidavits, taking facts affirmatively alleged by the plaintiff as true and viewing disputed facts in the light most favorable to plaintiff." *Sawtelle v. Farrell*, 70 F.3d 1381, 1385 (1st Cir. 1995).

---

[2] Use of the more demanding "preponderance-of-the-evidence" method is not warranted, as the record is not "rife with contradictions," the evidence is not conflicting, and BERG's evidence is not "patently incredible." *See Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 676 (1st Cir. 1992).

Plaintiff asserts "specific" as opposed to "general" jurisdiction. *See Ace Am. Ins. Co. v. Oyster Harbors Marine, Inc.*, 310 F. Supp. 3d 295, 303 (D. Mass. 2018). BERG does not allege that PSCM engages in significant and continuous activity in the forum state unrelated to the cause of action, which would support general jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Rather, BERG maintains that "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *Cavitron Corp. v. Ultrasonic Research Corp.*, 301 F. Supp. 293, 303 (S.D. Fla. 1969) (quoting *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994)). It maintains that PSCM's forum-based contacts support jurisdiction under both the Massachusetts long-arm statute and the Due Process Clause. *See Moura v. New Prime, Inc.*, 337 F. Supp. 3d 87, 92–93 (D. Mass. 2018).

A. Jurisdiction is Supported Under the Massachusetts Long-Arm Statute.

For a contract-based actions such as this one, the Massachusetts long-arm statute authorizes the exercise of jurisdiction in this state "over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's … transacting any business in this commonwealth…." Mass. Gen. Laws ch. 223A, § 3(a). The "transacting business" test under Subsection 3(a) is designed to identify deliberate contacts with the forum by the nonresident defendant, as opposed to merely incidental or fortuitous ones. *Lyle Richards Int'l v. Ashworth, Inc.*, 132 F.3d 111, 112–13 (1st Cir. 1997) (citing *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 389 N.E.2d 76, 82 (1979)). A relevant inquiry is whether the nonresident party initiated or solicited the business transaction in Massachusetts. *Id.* at 113. The "arising from" clause in Chapter 223A is to be generously construed in favor of asserting personal jurisdiction, by applying a "but for" causation test - in this case, whether the parties' contract would have come to fruition but for Defendant's contacts with the forum. *See eIQnetworks, Inc. v. BHI Advanced Internet Sols.,*

*Inc.*, 726 F. Supp. 2d 26, 33 (D. Mass. 2010) (citing *Lyle Richards Int'l.*, 132 F.3d at 114; *Tatro v. Manor Care*, 416 Mass. 763, 770, 625 N.E.2d 549, 553 (1994)).

Physical presence in Massachusetts is not necessary to establish personal jurisdiction pursuant to Subsection 3(a) of the long-arm statute. *See Workgroup Tech. Corp. v. MGM Grand Hotel*, 246 F. Supp. 2d 102, 110 (D. Mass. 2003). The Subsection is construed broadly and only a few acts by the defendant can suffice to meet the threshold for transacting business. *See Hannon v. Beard*, 524 F.3d 275, 280 (1st Cir. 2008); The *Scuderi Grp., L.L.C. v. LGD Tech., L.L.C.*, 575 F. Supp. 2d 312, 319 (D. Mass. 2008). Courts in this circuit have found transacting business in the forum on much more modest contacts with the forum than exist here. In *Ealing Corp. v. Harrods, Ltd.*, 790 F.2d 978 (1st Cir. 1986), the court determined that the defendant's sending one telefax and making telephone calls to a plaintiff in Massachusetts, which resulted in the cause of action, constituted transacting business within the meaning of Subsection 3(a). *Id.* at 983. In *Halchak Corp. v. Symbiot Bus. Grp., Inc.*, 516 F. Supp. 2d 149 (D. Mass. 2007), the court found that the mailing of one check to plaintiff in Massachusetts constituted a business transaction in Massachusetts and was enough to confer personal jurisdiction. *Id.* at 152.

Here, PSCM's contacts with the forum were initiated by it and were purposeful. PSCM learned during negotiations that Moynihan was based in Worcester. It contracted with BERG knowing this and then communicated with Moynihan in Massachusetts extensively throughout the parties' business relationship. PSCM's contacts with Massachusetts were central to the formation and execution of the parties' Fee Agreement. The agreement between the parties would likely not have been formed "but for" the exchange of emails and initial phone call with Moynihan in Massachusetts. *See eIQnetworks, Inc.*, 726 F. Supp. 2d at 33. The long-arm's statute minimal threshold for transacting business is met here.

PSCM incorrectly suggests that BERG has alleged that its investigation was limited to five different jurisdictions, none of which was Massachusetts. What BERG cites in its Complaint are some of the locales from which BERG obtained information. In fact, a good amount of the investigation happened from Moynihan's office in Worcester. From there he would do internet and data base searches, write reports and make the countless number of phone calls and email connections that were required. (Moynihan Affidavit, ¶20.) Unlike the factual scenario in <u>Lyle Richards Int'l</u>, where the court found that most of the contractual responsibilities were performed outside of Massachusetts, in this case core contractual responsibilities were performed by Moynihan in Massachusetts.

### B. The Exercise of Personal Jurisdiction over PSCM Comports with the Requirements of Due Process.

The Due Process Clause of the Fourteenth Amendment requires that the defendant have certain minimum contacts with the forum state so that the exercise of personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016); *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). The constitutional inquiry requires that the plaintiff demonstrate that: 1) the underlying claim directly arises out of or relates to the defendant's forum-state activities; 2) the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of that state's laws and making its presence before the forum state's courts foreseeable; and 3) the exercise of jurisdiction is reasonable. *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008) (citing *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007)).

*i.    Relatedness*

The relatedness test is a flexible, relaxed standard. *Pritzker v. Yari*, 42 F.3d 53, 61 (1st Cir. 1994). Yet, more than an attenuated connection is required. *Hopkins*, 2019 WL 3547085, at *5. The defendant's contacts must form an important or, at the least, material element of proof in the plaintiff's case. *See Phillips*, 530 F.3d at 27 (citing *Harlow v. Children's Hosp.*, 432 F.3d 50, 61 (1st Cir. 2005)). In contract cases, it should be determined if the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach. *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999).

PSCM's contacts with the forum directly related to its engagement of BERG and Moynihan to investigate the operations of Herbalife. PSCM contracted with BERG, fully aware that BERG, through Moynihan, was in Massachusetts. The contract was formed through phone and email contact with Moynihan in Massachusetts. Performance under the contract occurred substantially in Massachusetts, through Moynihan's investigative work here. PSCM's contacts with the forum included extensive communication with Moynihan, many requests of Moynihan for reports and information, and arrangements that he travel from Massachusetts to New York for meetings in connection with the engagement. PSCM's contacts with Massachusetts relate to the cause of action because they were material to the parties' relationship. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290* F.3d 42, 60 (1st Cir. 2002). These repeated communications with Moynihan constitute evidence of jurisdictional contact directed into the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174 (1985); *Workgroup Tech. Corp.*, 246 F. Supp. 2d at 113; *Pesmel N. Am., L.L.C. v. Caraustar Indus.*, 754 F. Supp. 2d 168, 173 (D. Mass. 2010).

PSCM argues that the engagement was for investigative work outside the jurisdiction. That is not factually accurate. BERG's principal investigator was here in Massachusetts and much of his work, including research and reporting, was done in Massachusetts. *Katz v. Spiniello Cos.*, 244 F. Supp. 3d 237 (D. Mass. 2017), cited by defendant for the proposition that a suit between two out-of-state defendants was not sufficiently related to Massachusetts, is inapposite. That case involved a tort claim in which the only significant contact of one defendant with Massachusetts was the location of an airplane crash that caused plaintiff's decedent's death.[3] Here, a contract action, PSCM's contacts with the forum go much deeper to include an extensive contractual relationship with an in-state resident, Moynihan. BERG maintains that the relatedness test is easily met.

    *ii.    Purposeful Availment*

In assessing purposeful availment of the privilege of conducting activity in the forum, the focus is on "voluntariness and foreseeability." *Daynard*, 290 F.3d at 61. Voluntariness requires that the defendant's contacts with the forum state "proximately result from actions by the defendant himself." *Phillips*, 530 F.3d at 27 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Foreseeability requires the defendant's contacts be of a nature that it could reasonably anticipate being hailed into the forum's courts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The two requirements protect defendants from suit in a jurisdiction because of random, fortuitous, or attenuated contacts. *Burger King Corp.*, 471 U.S. at 475. "The enforcement of personal jurisdiction over a non-resident defendant is foreseeable when

---

[3] A second defendant in Katz, which had a plant and employees in Massachusetts, did have an arguable link to the crash, as employees from Massachusetts traveled out of state to do maintenance on the airplane that later crashed. The court did find enough contacts to support jurisdiction over that defendant.

that defendant established a continuing obligation between itself and the forum state." *Sawtelle*, 70 F.3d at 1393.

PSCM sought out the services of BERG and immediately learned that BERG was based in large part in Massachusetts, through the work of its principal, Moynihan. It then voluntarily contracted with BERG and established a continuing obligation between itself and BERG, located in the forum state. PSCM chose to contract with BERG, and PSCM conducted business with BERG through its communications with Moynihan in Massachusetts over an approximate fourteen-month period. BERG maintains that PSCM benefited from those contacts. *See Burger King Corp.*, 471 U.S. at 473 (parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities).

PSCM argues in its brief in support, "[t]o summons PSCM into this Court, BERG must demonstrate that PSCM purposefully availed itself of the Commonwealth's benefits and protections with the intent of creating a long-lasting relationship here." That is precisely what happened. PSCM sought out and then engaged BERG, knowing full well one of its principal contacts would be Moynihan in Worcester. PSCM's actions were purposeful, and through them it certainly must have realized that it could be hailed into the courts of Massachusetts in connection with its contractual engagement with BERG. Thus, the purposeful availment prong is met.

PSCM relies upon the cases of *D.F. Pray, Inc. v. Edison Plaza OP L.L.C.*, No. 14-cv-14319-IT, 2015 WL 4624357 (D. Mass. Aug. 3, 2015), and *Copia Commc'ns, L.L.C. v. AMResorts, L.P.*, 812 F.3d 1 (1st Cir. 2016), in arguing that it did not purposefully avail itself of the privilege of conducting business in Massachusetts. In <u>D.F. Pray</u>, the court found that the relatedness prong was met by emails and telephone calls into Massachusetts as part of the

negotiations and performance of the contract, as well as some contractual performance in Massachusetts. The court found that the purposeful availment test was not met because it was not foreseeable that the out-of-state defendant could be sued in Massachusetts over a project that was based in New Jersey. This case is distinguishable because PSCM voluntarily contracted with BERG knowing Moynihan was located here and much of his investigative work had to emanate from Massachusetts. The relationship continued for over a year, and performance was substantially centered in Massachusetts.

In Copia the plaintiff provided internet services to hotels, and it sent an offer to provide services to two Jamaican hotels operated by a Pennsylvania company. The performance called for by the contract was to install internet services at the hotels in Jamaica and provide ongoing support and maintenance there. The court found that the defendant did no more than welcome plaintiff's offer to provide equipment and services from Massachusetts and concluded that the necessary purposeful availment was lacking. In this case, it was PSCM that initiated the contact that resulted in an ongoing contractual relationship with BERG and Moynihan in Massachusetts. PSCM continued to solicit the investigative services of Moynihan under the parties' contract.

   *iii.*  *Reasonableness*

The test of whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice" focuses on a series of "gestalt factors" that bears on the fairness of subjecting the nonresident defendant to suit in a foreign tribunal: (1) the defendant's burden of appearing in the forum, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. *Moura*, 337 F. Supp. 3d at 98. A plaintiff's weaker showing

on the relatedness and purposeful availment prongs would dictate a more significant showing of reasonableness. *Hopkins*, 2019 WL 3547085, at *7 (citing *Ticketmaster-N.Y. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994)).

PSCM readily admits in its brief that there is little burden on it in having to defend an action brought in this Court. It is based a short distance away in New York City, and Worcester is certainly quite accessible from there. "[T]his factor is only meaningful where a defendant can demonstrate some kind of special or unusual burden." *Pritzker*, 42 F.3d at 64.

Massachusetts has a general interest in adjudicating claims involving its citizens and a legitimate desire to offer protection and redress to them. *See Noonan v. Winston Co.*, 135 F.3d 85, 92 (1st Cir. 1998); *Hopkins*, 2019 WL 3547085, at *8; *see also Diamond Grp., Inc. v. Selective Distrib. Int'l, Inc.*, 84 Mass. App. Ct. 545, 554, 998 N.E.2d 1018 (2013) ("the Commonwealth has a manifest interest in providing a convenient forum to residents asserting good faith and objectively reasonable claims for relief"). Moynihan, one of two principals in BERG at the time of its contracting with PSCM, is a lifelong Massachusetts resident and conducts his business from here. Moynihan is a key witness in this action and his chosen counsel is in Worcester. BERG has no offices in New York and none of its principals reside there. Thus, BERG has a keen interest in having this dispute adjudicated here in Massachusetts. The judicial system has an interest in protecting Plaintiff's choice of forum where, as here, it is not unreasonable at all to subject PSCM to the jurisdiction of this Court.

Effective and cost-effective resolution of this controversy would involve maintaining jurisdiction here and not subjecting either party to a change of venue and the associated costs. *See IBM v. Merlin Tech. Sols., Inc.*, No. 06-40174-FDS, 2007 WL 335258, at *8 (D. Mass. Feb. 1, 2007) ("the efficient administration of justice favors jurisdiction in Massachusetts, where this

action is already proceeding against defendant."). Finally, BERG suggests that there is no particular social policy favoring or disfavoring the Massachusetts forum. In sum, BERG submits that the exercise of personal jurisdiction over PSCM in this district concerning this matter would be reasonable and fundamentally fair. Thus, PSCM's Rule 12(b)(2) Motion should be denied.

II.     <u>BERG'S COMPLAINT IS NOT SUBJECT TO DISMISSAL FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.</u>

A motion to dismiss under Rule 12(b)(6) should only be granted if there are no set of facts that would support a claim for relief; dismissal is appropriate only if the well-pled facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., L.L.C.*, 521 F.3d 76, 84 (1st Cir. 2008). The plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In assessing the facts pled, the court should accept the allegations of the complaint as true and provide plaintiff with the benefit of all reasonable inferences. *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).

BERG easily meets this minimal standard at this stage of the proceeding. BERG alleges that PSCM breached the terms of its contract by failing to pay an earned performance bonus. It alleges that PSCM, in making its unilateral determination that the increase in hourly rate for the hours that BERG worked was not earned, ignored the very clear financial benefit that BERG's work provided. BERG's assertion that this determination was not made in good faith and made specifically to deny an earned benefit under the contract, states a claim plausible on its face for breach of the duty of good faith and fair dealing implied in the parties' contract.

PSCM makes much of the fact that the price of the stock started at $28 when it took its short position, suggesting that BERG accomplished nothing when the price returned to that range at the end of its engagement. However, the stock price rose considerably after the short position

was taken in May 2012 until BERG was hired in December 2013. After that, the stock dropped steadily until it neared its lowest point in March 2015, when BERG was told to stand-down. These facts are specifically alleged in the Complaint and support BERG's claim that a performance bonus was earned under the contract. PSCM also cites the rise in the Herbalife stock price at certain points during BERG's work. Yet, focusing on just these changes ignores the cumulative effect of BERG's work on the price over time. What effect the investigative work had on the stock price and the financial position of PSCM is of course a fact issue for trial.

PSCM asserts that there can be no contractual breach because the agreement required that BERG initiate "a case" or litigation. Yet, a simple reading of the Fee Agreement reveals that such a strategy was never contemplated. The Agreement outlines generally the tasks that BERG would undertake. Nowhere in the agreement does it state that BERG would seek to start a litigation against or directed at Herbalife. BERG drafted the Fee Agreement and used the word "case" to refer to the work that BERG was going to do, that is, develop information about Herbalife. BERG refers to all its matters as "cases." (Moynihan Affidavit, ¶15.) The word "case" is not meant to connote a court filing or the development of a litigation case, and the letter says nothing of the sort. (Id.) If the use of the word "case" in the Fee Agreement is deemed to be ambiguous then the meaning of the contract becomes a question of fact, and dismissal at this early stage, without discovery and a full hearing, would not be appropriate. "The meaning of an unambiguous contract term is a question of law, while the meaning of an ambiguous contract term is a question of fact." *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 783–84 (1st Cir. 2011); *see also Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 178 (2d Cir. 2004) ("if a contract is ambiguous..., a court has insufficient data to dismiss a complaint for failure to state a claim").

PSCM bases its 12(b)(6) motion on the assertion that it fulfilled its obligations under the contract and therefore BERG cannot establish that Defendant failed to perform. This conclusory assertion is not availing on a motion to dismiss at the outset of the litigation. In fact, BERG alleges that PSCM <u>did not</u> fulfill the terms of the contract, asserting that PSCM was required to pay the premium rate for the hours worked. Under the contract PSCM was required to exercise a good-faith, rational judgment as to whether BERG's work product was beneficial to its financial standing. BERG has alleged in its Complaint that PSCM could not have made this assessment because any reasonable and objective review of BERG's work would have shown that the investigative work had a significant impact on the stock price, beneficial to PSCM's position. PSCM should not be able to use its discretion under the contract to deny benefits that are clearly due. The exercise of contractual discretion requires that the exercising party promise not to act arbitrarily or irrationally in exercising its discretion. *See Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995); *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471–73 (1991). That is precisely what BERG asserts that PSCM did in this instance. No rational assessment of the facts could have resulted in a conclusion that BERG's efforts did not financially benefit PSCM. Because these facts are well-pled, a 12(b)(6) motion does not lie.

Contrary to PSCM's arguments, BERG does plainly allege that the three conditions under the contract came to fruition. BERG developed "a case", albeit not a litigation case, as the agreement did not require this. BERG's work was "settled or resolved" when PSCM asked it to stand-down at a time when the stock was at or near its lowest. PSCM in fact did not object to the payment of the premium under the contract at that time, but simply asked BERG to await the resolution of its short position. Thirdly, BERG claims that PSCM did not appropriately exercise its contractual discretion by rationally determining that BERG's work <u>did</u> benefit it financially,

given the significant drop in stock price during BERG's investigative work. These allegations support both claims for breach of contract and breach of the covenant of good faith and fair dealing. *See Dalton*, 87 N.Y.2d at 389; *Anthony's Pier Four, Inc.*, 411 Mass. 451, 471–73 (1991).

III. <u>IF THE COURT DETERMINES THAT PERSONAL JURISDICTION IS LACKING, IT SHOULD EXERCISE ITS DISCRETION TO TRANSFER THE ACTION TO ANOTHER DISTRICT.</u>

BERG requests that the Court exercise its discretion to transfer this case to the Southern District of New York, should the Court determine that PSCM is not subject to personal jurisdiction here in Massachusetts arising out of this transaction. Pursuant to 28 U.S.C. § 1406(a) (2018), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer the case to any district or division in which it could have been brought." The district court has the authority to transfer a case pursuant to 28 U.S.C. § 1406(a) even where the court lacks personal jurisdiction over a defendant. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465–67 (1962). "The language of 28 U.S.C. § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc.*, 369 U.S. at 466.

BERG submits that the Court should find that it has personal jurisdiction over PSCM. However, if the Court determines otherwise, it may transfer this case rather than dismiss it if a transfer serves the interest of justice. A transfer which allows the case to be decided on the merits is in the interest of justice. *See Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993); *Bearse v. Main St. Invs.*, 170 F. Supp. 2d 107 (D. Mass. 2001) ("It is far better that the allegations be resolved on the merits than on the basis that the plaintiff picked a forum in which to sue in which neither personal jurisdiction nor venue existed"). Thus, if jurisdiction is lacking here, BERG

would request that Defendant's Motion to Dismiss be denied and the case be transferred to the Southern District of New York.

CONCLUSION

For all these reasons, Plaintiff respectfully requests that the Defendant's Motion to Dismiss under Rule 12(b)(2) and Rule 12(b)(6) be denied.

Respectfully submitted,

BUSINESS EXPOSURE REDUCTION GROUP (BERG) ASSOCIATES, LLC

By their attorney,

/s/ Thomas J. Scannell
_____
Thomas J. Scannell, Esquire (Mass. BBO# 546224)
Fusaro, Altomare & Ermilio, P.C.
71 Elm Street, Suite 102
Worcester, MA 01609
Telephone No.: (508) 798-3771
Email: tscannell@faelaw.com

Dated: February 24, 2020

REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiff requests a hearing on Defendant's Motion to Dismiss, as counsel for Plaintiff believes that oral argument may assist the court.

CERTIFICATE OF SERVICE

I hereby certify that I have caused a true copy of the above document to be served upon all counsel of record via the Court's CM/ECF system on February 24, 2020 and that a copy will be sent to those not receiving a notice of electronic filing (or NEF) through the ECF system.

/s/ Thomas J. Scannell
_____